# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

NORTHLAND MANAGEMENT & )
CONSTRUCTION, LLC, )
)
        Plaintiff, )
)     Case No. 4:24-CV-06005-BCW
v. )
)
CITY OF PARKVILLE, )
)
        Defendant. )

## ORDER

Before the Court is Defendant's motion for summary judgment. (Doc. #96). The Court, being duly advised of the premises, grants in part and denies in part said motion.

## BACKGROUND

On January 12, 2024, Plaintiff Northland Management & Construction, LLC ("Plaintiff") filed a complaint against Defendants City of Parkville; Alexa Burton, City of Parkville Administrator; Stephen Lachkey, City of Parkville Community Development Director; and Ed Gault, City of Parkville Building Official. (Doc. #1). On March 8, 2024, the Court granted Defendant's unopposed motion to dismiss the official capacity claims against Alexa Burton, Stephen Lachkey, and Ed Gault. (Doc. #14). Therefore, the City of Parkville ("Defendant") is the only remaining defendant in this action.

Plaintiff asserts the following five counts in its complaint: Count I – Regulatory Taking; Count II – Procedural Due Process Under 42 U.S.C. §§ 1983 and 1988; Count III – Equal Protection; Count IV – Inverse Condemnation (in the Alternative to Count I); and Count V – Mandamus and Declaratory Judgment. (Doc. #1). Plaintiff asks the Court to order Defendant to issue a Final Certificate of Occupancy, enjoin Defendant from asserting any further violations of

1

any city ordinance declaring Lot 9 to be in non-conformance, award compensatory and punitive damages, and award attorney fees and expenses.

On October 29, 2024, Defendant filed the instant motion for summary judgment asking the Court to dismiss Plaintiff's complaint and enter judgment in its favor. (Doc. #96). The matter is now fully briefed and ripe for disposition.

## UNCONTROVERTED FACTS

This case stems from the denial of a Certificate of Occupancy ("CO") for a property owned by Plaintiff. The property at issue is located at 9871 Promenade Drive in Parkville, Missouri, and is referred to as Lot 9. (Doc. #109 at 1–2). Lot 9 is portion of the Sixth Plat of the Cider Mill Ridge subdivision. (Docs. #1-3, #97 at 6, #110 at 3–4). On November 2, 2015, the final plat[1] for Lot 9 was sealed by Defendant. (Doc. #104 at 5–6). A property that is platted is still subject to change. (Doc. #109 at 10–11). Plaintiff has built other homes in the City of Parkville that complied with all municipal codes and has received Final COs for those properties. Id. at 15.

Plaintiff began construction on Lot 9 in 2020. (Doc. #104 at 6). Plaintiff graded[2] Lot 9 out to the property line. (Doc. #109 at 3–4). On December 19, 2022, Defendant issued a Temporary CO for Lot 9, identifying a "Section 520" issue as requiring additional work. (Doc. #1-18). On January 4, 2023, Plaintiff requested that Defendant issue a Final CO. (Doc. #1-19). Defendant denied Plaintiff a Final CO for Lot 9 for reasons related to the grading of a swale[3] and the armoring in a ditch—specifically, the laying of riprap (a type of gravel or stones). (Doc. #109 at 9). The only deficiency identified in the final inspection was that Lot 9 did not comply with Chapter 520 of the Parkville Municipal Code, which regulates grading. (Doc. #104 at 10). Defendant requested

---

[1] A plat is a graphical representation of an area of land, drawn to scale.
[2] Grading is the process of reshaping the land.
[3] A swale is a long depression in land designed to redirect the flow of water.

Plaintiff pull, or apply for, a 520-grading permit, a permit issued pursuant to Chapter 520 of the Parkville Municipal Code. (Doc. #109 at 8). Plaintiff did not pull a 520-grading permit. Id.

On February 4, 2023, Plaintiff filed a writ of mandamus against Defendant in the Circuit Court for Platte County, Missouri, in case number 23AE-CC00039, seeking to have the circuit court compel Defendant to issue a Final CO for Lot 9. (Doc. #104 at 16–17). Plaintiff sought, in that suit, to have the circuit court interpret Chapter 520 of the Parkville Municipal Code. Id. On October 3, 2023, the mandamus action was dismissed. Id.

On November 16, 2023, Plaintiff filed an Application for Appeal of Administrative Decision with the Board of Zoning Adjustment ("BZA"), which the BZA received on November 17, 2023. (Docs. #109 at 12, #1-24). On November 28, 2023, a City of Parkville official notified Plaintiff that its application was filed out of time, the BZA would not hear the request, and the application fee would be refunded. (Doc. #1-25).

## LEGAL STANDARD

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden to establish that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, the court evaluates the evidence in the light most favorable to the nonmoving party, and the nonmoving party is entitled to "the benefit of all reasonable inferences." Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991); White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008).

## ANALYSIS

Defendant raises the following arguments in support of its motion for summary judgment: (1) Mo. Rev. Stat. § 89.110 bars Plaintiff's claims; (2) Plaintiff has no cognizable takings claim because it had no vested right in the issuance of a CO, Plaintiff was not deprived of all economic benefit of the property, and its inverse condemnation claim is barred by state and federal law; (3) Plaintiff's Due Process claim fails because it had no protectable property interest in a CO; (4) Plaintiff's Equal Protection claim fails because Defendant treated Plaintiff the same as all other developers and had a rational basis for withholding the CO; and (5) claim preclusion bars Plaintiff's claim for mandamus and injunctive relief. (Doc. #97).

Plaintiff argues Defendant is seeking to deprive Plaintiff of a trial on the merits and stripping Plaintiff of its constitutional rights. (Doc. #108). Plaintiff argues Defendant's application of Chapter 520 is unconstitutional, and it is therefore inappropriately refusing to issue a CO. Chapter 520 reads, in relevant part:

> Section 520.010 **Permit Requirement.**
> A.  Except as provided in Section 520.020, no person shall, without first obtaining a grading permit for such work from the Building Official, alter or cause to be altered the present surface of the ground.
> . . . .
> Section 520.030 **Exceptions.**
> A.  A grading permit is not required for the following:
>   1.  Where grading is a part of an approved subdivision development for which street and utility plans have been approved.

PARKVILLE, MO., ORD. NO. 1206 §§ 1–3, 2-5-1990. In addition, Plaintiff alleges unequal treatment, contends Defendant has singled out Lot 9, and argues the drainage issues central to this case are a regional concern Defendant is trying to force Plaintiff to fix on its behalf. Plaintiff argues there are genuine issues of material fact that preclude summary judgment.

4

## I. Mo. Rev. Stat. § 89.110 Does Not Bar Plaintiff's Claims.

Defendant argues § 89.110 provides the exclusive remedy for Plaintiff's grievances and therefore requires dismissal of all claims. (Doc. #97). Defendant asserts that Plaintiff understood it had to apply to the Board of Zoning Adjustment ("BZA") regarding Defendant's decision to deny a Final CO. Defendant argues Plaintiff applied to the BZA and the BZA denied Plaintiff's appeal on November 28, 2023, and Plaintiff knew that decision was final. Consistent with § 89.110, Defendant argues Plaintiff's valid and exclusive remedy was to then file an action in state court by December 28, 2023, challenging the BZA's denial. Because Plaintiff instead filed this suit in federal court, Defendant argues its claims are barred.

In opposition, Plaintiff argues § 89.110 is inapplicable. (Doc. #104). Plaintiff argues first and foremost that it never in fact received a decision from the BZA. Regardless, Plaintiff argues § 89.110 does not preclude suits where a party challenges the constitutionality of how an ordinance was applied. Plaintiff argues it is making that very type of challenge and not merely challenging a decision by the BZA.

Decisions by the City of Parkville to deny a CO are reviewable by the BZA. Section 89.110 of the Missouri Code provides the requisite statutory procedure to contest the decision of a BZA in Missouri. It states, in part, the following:

> Any person or persons jointly or severally aggrieved by any decision of the board of adjustment, . . . may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

Mo. Rev. Stat. § 89.110. The Missouri Court of Appeals has held that a distinction exists under § 89.110 between attacks on the decision of a board of adjustment and attacks on the validity of an ordinance, including as-applied constitutional challenges. <u>Duffner v. City of St. Peters</u>, 482

S.W.3d 811, 817–18 (Mo. Ct. App. 2016). Section 89.110 provides a valid, and therefore exclusive, remedy for the former but not the latter type of challenge. Id. Moreover, the scope of the statute is limited to decisions by BZAs, and it does not apply to decisions by any other entities. Babb v. Missouri Pub. Serv. Comm'n, 414 S.W.3d 64, 74 (Mo. Ct. App. 2013).

Here, the Community Development Director of the City of Parkville informed Plaintiff over email that the BZA would not hold a hearing regarding the CO denial because Plaintiff's application was filed beyond the 30-day deadline required by Parkville Municipal Code § 403.090. (Doc. #1-25 at 3). Plaintiff argues the rejection of its appeal in this manner does not qualify as a BZA decision subject to § 89.110. (Doc. #104). Meanwhile, Defendant presumes without argument that these communications constitute a BZA decision. (Doc. #97).

No Missouri court has addressed the issue of whether rejection of an appeal by the BZA as untimely constitutes a *decision* of the BZA. However, as a general matter of law, rejecting an appeal as untimely—although not a decision on the merits—is a decision. See, e.g., Barnes v. Arkansas Dep't of Correction, 485 F. App'x 151, 152 (8th Cir. 2012) ("appeal was not decided on the merits but was denied because it was untimely"). But even if the rejection did not constitute a "decision" for purposes of § 89.110, a federal court has no power to review the application of a city ordinance for its correctness unless it raises a federal question. Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 807–09 (1986) (explaining the requirements of federal question jurisdiction). General claims that the City of Parkville incorrectly applied one of its own ordinances to a property within its borders is a legal concern that on its face raises no federal question. If Plaintiff were only bringing a facial challenge to Defendant's action—arguing Defendant simply applied the ordinance incorrectly—such claims, standing alone, are barred.

However, Plaintiff also brings an as-applied challenge to the application of Chapter 520 by Defendant. Plaintiff alleges Defendant's refusal to issue a Final CO for Lot 9 due to the 520-grading issue was an unconstitutional action in violation of the Fifth Amendment because it constitutes a taking without just compensation under these particular circumstances. (Doc. #1 at 19). This type of as-applied challenge raises a federal question and is "not encompassed by the statutory procedure for contesting a decision of the Board." Duffner, 482 S.W.3d at *818–19.

In evaluating the Counts alleged in Plaintiff's complaint, the Court will consider Plaintiff's as-applied arguments. To the extent it is necessary to decide whether Defendant incorrectly applied its ordinance to Plaintiff such that it violated Plaintiff's federal rights, this Court exercises supplemental jurisdiction over that issue because it arises from the same case or controversy. 28 U.S.C. § 1367(a); Hunter v. Page Cnty., Iowa, 102 F.4th 853, 868–72 (8th Cir. 2024); Texas Disposal Sys., Inc. v. City of Austin, Texas, No. A-11-CV-1070-LY, 2014 WL 12768460, at *7 (W.D. Tex. Mar. 20, 2014) (exercising supplemental jurisdiction over a plaintiff's claim that the city improperly determined it violated a city ordinance).

**II. Defendant is Not Entitled to Summary Judgment on Count I Regulatory Taking.**

In its complaint, Plaintiff asserts Count I – Regulatory Taking. (Doc. #1 at 19). To support Count I, Plaintiff alleges Defendant wrongfully refused to grant it a Final CO, refused to perform a final inspection, and refused its Application for Appeal of Administrative Decision. Id. at 19–20. Plaintiff argues these actions advanced no legitimate state interest reasonably related to Chapter 520 and deprived Plaintiff of all reasonable or economic use of the property.

In asking for summary judgment, Defendant argues there is no basis for a regulatory taking or inverse condemnation claim because Plaintiff had no vested rights in the Final CO, but even if it did, a takings analysis favors Defendant. (Doc. #97 at 13–20). According to Defendant, Plaintiff believes it obtained vested rights by purchasing the property because it fell within the bounds of a

city-approved plat. However, Defendants argue one cannot purchase vested rights, so Plaintiff's belief is incorrect. Defendant contends it had a valid right to withhold the Final CO, so Plaintiff's rights were not vested. Even if Plaintiff had vested property rights, Defendant argues Plaintiff has not been deprived of all economic value or all use of its property.

In opposition, Plaintiff asserts that Defendant's arguments are incorrect. (Doc. #104). Plaintiff argues its vested right is the right to a reasonable economically beneficial use, which does not exist because Defendant has made it impossible for the land to be sold anywhere near its fair market value. Plaintiff argues the value of the property need not be reduced to absolutely nothing but to the point where a property owner could realize no reasonable economic use. Plaintiff additionally contends that Defendant's actions serve no legitimate public purpose.

The Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V; Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226 (1897). Where government regulation restricts the use of private property so onerously as to become the functional equivalent of a physical taking, it is considered a regulatory taking and the requirements of the Fifth Amendment apply. Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1014 (1992); Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 414–15 (1922). Only claimants with vested property rights may raise a regulatory taking claim. Landgraf v. USI Film Prods., 511 U.S. 244, 266 (1994).

Here, Plaintiff has vested property rights. Defendant mischaracterizes Plaintiff's property right—or more specifically, the lack thereof—as an interest in the Final CO. (Doc. #97). Defendant argues city officials have discretion to deny COs and the law regulating COs can always be changed, so Plaintiff has no vested rights. However, Plaintiff's claim is not that it was entitled to

the Final CO and denial itself is a taking, but that it has the right to an economically beneficial use of Lot 9 and the land-use regulation as-applied to it constitutes a regulatory taking by denying all economically beneficial or productive use of the land. Plaintiff has vested rights in Lot 9 because a landowner possesses the right to use and enjoy their land. Labrayere v. Bohr Farms, LLC, 458 S.W.3d 319, 332 (Mo. 2015) ("There is no doubt that individuals have a fundamental constitutional right to use and enjoy property free from arbitrary governmental interference."); Henneford v. Silas Mason Co., 300 U.S. 577, 582 (1937) ("The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership."). Therefore, Plaintiff may bring a claim under the Takings Clause.

Even if Plaintiff were asserting that it was entitled to the Final CO, the Court would still find that it has vested property rights. "The issuing of a permit is a ministerial act, not a discretionary act, which may not be refused if the requirements of the applicable ordinance have been met." Curry Inv. Co. v. Bd. of Zoning Adjustment of Kansas City, Missouri, 399 S.W.3d 106, 109 (Mo. Ct. App. 2013) (quoting State ex rel. Kugler v. City of Maryland Heights, 817 S.W.2d 931, 933 (Mo. Ct. App. 1991)). Plaintiff alleges Lot 9 meets all the requirements of City of Parkville ordinances, which leaves city officials with no discretion to deny the Final CO. Consequently, Plaintiff has a vested right in receipt of the certificate of occupancy, not merely an expectation. In other words, Plaintiff has a legitimate claim of entitlement to the Final CO, resulting in a protectable property interest. Stevenson v. Blytheville Sch. Dist. #5, 800 F.3d 955, 968 (8th Cir. 2015).

The authority Defendant cites to the contrary is inapplicable. Were Plaintiff merely alleging a vested right in the continued application of an ordinance, then the authority Defendant cites would apply. Fisher v. Reorganized Sch. Dist. No. R-V of Grundy Cnty., 567 S.W.2d 647, 649

(Mo. 1978) (holding a party lacks a vested right where they merely expect a law to remain unchanged); Metro Fill Dev., LLC v. St. Charles Cnty., 614 S.W.3d 582, 591 (Mo. Ct. App. 2020) ("Missouri courts have consistently held that an application for a property-related permit does not give the applicant a vested right in the application of a particular ordinance."). But this case does not present such a situation; there are no allegations that the relevant ordinances have changed in any way since the initiation of the conflict between the parties.

"[A] plaintiff seeking to challenge a government regulation as an uncompensated taking of private property may proceed . . . by alleging a 'physical' taking, a Lucas-type 'total regulatory taking,' a Penn Central[4] taking, or a land-use exaction violating the standards set forth in Nollan[5] and Dolan[6]." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 548 (2005) (footnotes added). Plaintiff has brought an as-applied total regulatory taking challenge to Defendant's land use regulation, arguing Defendant unconstitutionally applied Chapter 520 to Lot 9 in a manner that has deprived Plaintiff of all reasonable beneficial use. See Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 494 (1987) (distinguishing between a facial takings challenge, "a claim that the mere enactment of a statute constitutes a taking," and an as-applied challenge, "a claim that the particular impact of government action on a specific piece of property requires the payment of just compensation.").

To prove a total regulatory taking, Plaintiff must show the land-use regulation denied it of *all* economically beneficial or productive use of its land. Lucas, 505 U.S. at 1027. The question of "whether a landowner has been deprived of all economically viable use of his property is a predominantly factual question." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526

---

[4] Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104 (1978).
[5] Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987).
[6] Dolan v. City of Tigard, 512 U.S. 374 (1994).

U.S. 687, 720 (1999). Therefore, unless undisputed, it is a question for the jury. Id.; see Williamson Cnty. Reg'l Plan. Com'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).

The Court acknowledges that "[d]iminution in value, standing alone, does not establish a 'taking.'" Scott v. City of Sioux City, Iowa, 736 F.2d 1207, 1217 (8th Cir. 1984). Furthermore, "the denial of one traditional property right does not always amount to a taking. At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." Andrus v. Allard, 444 U.S. 51, 65–66 (1979). This remains true even where the land-use regulation prevents the most profitable use of the property. Id. at 66.

The "test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property." Keystone, 480 U.S. at 497. Plaintiff's expert appraiser, Robert Marx, opined that the property is worth $207,000 without the Final CO and would be worth $680,000 with the Final CO, representing a 70% diminution in value. (Doc. #104-7 at 75, 83). Defendant has denied Plaintiff the most profitable use of Lot 9 by denying the Final CO. Yet, the parties contest whether denial of the Final CO—which effectuated the alleged taking—rendered Lot 9 valueless for purposes of a takings claim.

Defendant argues Lot 9 has value and economic use remains because Lot 9 could still be sold to another builder or individual. (Doc. #97 at 16). To support its argument, Defendant cites deposition testimony of two expert witnesses who stated the property has value because it can be sold, even though the home built on the land cannot be inhabited. (Doc. #97 at 16). However, the question for purposes of the Takings Clause is not whether the property has any value at all but whether it still has an economically viable use. Lucas, 505 U.S. at 1015–16.

11

In the case of real property—as opposed to personal property whose "only economically productive use is sale or manufacture for sale"—the Court's focus is not on whether a piece of land has any residual or appraisal value. Lucas, 505 U.S. at 1028; Palazzolo v. Rhode Island, 533 U.S. 606, 631 (2001) ("Assuming a taking is otherwise established, a State may not evade the duty to compensate on the premise that the landowner is left with a token interest."); Lost Tree Vill. Corp. v. United States, 787 F.3d 1111, 1117–18 (Fed. Cir. 2015). Instead, the Court must determine whether the residual value that remains is attributable to any economic use, such that the property is "sufficiently desirable to permit property owners to sell the property to someone for that use." Park Ave. Tower Assocs. v. City of New York, 746 F.2d 135, 139 (2d Cir. 1984); Lost Tree, 787 F.3d at 1119. In considering whether Lot 9 has an economically viable use, it is important to keep in mind that the Final CO was not denied due to any fault with the house built on the property but due to surface water related issues in the backyard, and the parties dispute whether these issues could ever be resolved (regardless of cost).

Ultimately, it is disputed whether Lot 9 retains any economically viable use without the Final CO. Lot 9 is designated in the Sixth Plat of the Cider Mill Ridge subdivision for a single-family home, so the permitted use of the land is strictly limited by municipal ordinance to residential use. Therefore, while Defendant's regulations do not preclude all development on the land or require the property to remain vacant, Defendant nonetheless prohibits the single use that is permitted for Lot 9 by refusing to issue the Final CO. As a result, the value that remains for Lot 9 may be purely residual value resulting from noneconomic uses.

Furthermore, Defendant's argument that Lot 9 could be sold is purely speculative—it assumes without evidence that a single-family-home property where individuals are not allowed to reside could be sold to homebuyers or another builder. Speculation as to the use or value of land

12

is not proper in a takings analysis. See Olson v. United States, 292 U.S. 246, 257 (1934). Defendant, as the moving party, bears the burden of proving that summary judgment should be awarded because economic value remains as to Lot 9. Anderson, 477 U.S. at 256. Defendant has failed to produce evidence that concretely supports this position. Absent such proof, it remains a disputed material fact and Defendant is not entitled to summary judgment on Count I.

In lieu of having to demonstrate the existence of economic value, Defendant also argues that its actions are a proper exercise of regulatory power under nuisance law. (Doc. #97 at 16–17). A city is not liable for a total regulatory taking where its action could be sustained under state nuisance law because such action is merely the proper exercise of police power. Lucas, 505 U.S. at 1029. In determining whether this is the case, a court may consider the degree of harm to public lands or adjacent private property, the value of the plaintiff's activities and their suitability to the area, and "the relative ease with which the alleged harm can be avoided through measures taken by the claimant and the government (or adjacent private landowners) alike." Id. at 1031. The government's position is weakened if the relevant use is engaged in by similarly situated owners, or if such owners are permitted to continue the use denied to the plaintiff. Id.

Under Missouri law, "[t]he term 'nuisance' connotes the use of one's property in a manner which is not abstractly unlawful but which, in the circumstances, demonstrates an unreasonable interference with the rights of neighboring property owners." Looney v. Hindman, 649 S.W.2d 207, 213 (Mo. 1983). A property owner has committed a nuisance when the owner diverts surface water from its natural flow by artificial means discharging it upon a servient estate. Hawkins v. Burlington N., Inc., 514 S.W.2d 593, 600 (Mo. 1974). However, under the rule of reasonableness "each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his

harmful interference with the flow of surface waters is unreasonable." <u>Heins Implement Co. v.</u> <u>Missouri Highway & Transp. Comm'n</u>, 859 S.W.2d 681, 689 (Mo. 1993) (quoting <u>Armstrong v.</u> <u>Francis Corp.</u>, 120 A.2d 4, 8 (1956)). Reasonableness is determined on the facts of a given case, considering whether the owner's actions were needless or negligent or intentional. <u>Id.</u> at 689–90.

After weighing the relevant factors, the Court finds Defendant has not proven it is entitled to summary judgment under a nuisance theory. The only factor weighing in favor of Defendant is the risk of harm to adjacent private property and public lands from water intrusion. This is admittedly persuasive, but ultimately outweighed by the remaining considerations. Plaintiff contends that the water runoff is a regional issue created by Defendant when it approved an open system for the Sixth Plat in 2015 that does not comply with the American Public Works Association Section 5600. (Doc. #104 at 28). Defendant admits this fact solely for purposes of its motion for summary judgment but argues it is immaterial because it does not change the outcome. Plaintiff also asserts that the water eventually drains into a detention basin. <u>Id.</u> at 27. Defendant neither confirms nor denies this assertion. Additionally, Plaintiff presents evidence that water runoff is traditionally shared evenly across property lines, which Defendant also admits for purposes of its motion. (Doc. #110 at 2). Furthermore, the parties dispute whether neighboring property owners were permitted to take the same actions as Plaintiff yet receive a Final CO despite the same risk of water intrusion on neighboring parcels. <u>Id.</u> at 8–10. Plaintiff's activities in constructing a home are valuable to the residential area, but whether Plaintiff's grading is a suitable action for the area is disputed. The parties also dispute whether Plaintiff's actions were condoned and supervised by City officials, but there is little evidence to suggest Plaintiff sought to intentionally divert water onto neighboring properties in a negligent or wrongful manner. Taking all circumstances into account and viewing them in the light most favorable to Plaintiff, it is not

14

clear whether Defendant's action would be sustained under Missouri nuisance law. Therefore, Defendant is not entitled to summary judgment on Count I under a theory of nuisance.

### III. Defendant is Granted Summary Judgment on Count IV Inverse Condemnation to the Extent it Rests on Federal Law, But Defendant is Not Entitled to Summary Judgment on Count IV to the Extent it Rests on Missouri Law.

In the alternative to Count I, Plaintiff asserts Count IV – Inverse Condemnation. (Doc. # 1 at 25). To support Count IV, Plaintiff alleges Defendant's actions constitute an unreasonable, unusual, or unnatural use of Lot 9, including its proposed use of the land as a catch basin. Id. at 25–26. Plaintiff argues Defendant has effectively taken Plaintiff's land through unlawful application of its land use restrictions and regulations.

Defendant argues any inverse condemnation claim under federal law is improper or duplicative of Plaintiff's takings claim, and Plaintiff cannot assert a state inverse condemnation claim because it is not ripe and Plaintiff lacks standing under Missouri law. (Doc. #97). Plaintiff maintains that it has properly pled an inverse condemnation claim, genuine issues of fact exist as to that claim, and Defendant's arguments otherwise are without merit. (Doc. #104).

Firstly, Defendant correctly points out that Plaintiff fails to assert the law—either federal or state—by which it means to mount its inverse condemnation claim. Therefore, the Court addresses both, beginning with federal law.

### A. Defendant is Granted Summary Judgment on Plaintiff's Federal Inverse Condemnation Claim Because it is Duplicative of Plaintiff's Takings Claim.

Defendant is incorrect in arguing that the facts of this case—denial of a certificate of occupancy—cannot support a federal inverse condemnation claim. Defendant relies heavily on Aga v. Meade County to support this argument. No. CIV. 21-5059-JLV, 2022 WL 3716000 (D.S.D. Aug. 29, 2022), aff'd, No. 22-3046, 2023 WL 3300960 (8th Cir. May 8, 2023). However, the portion of Aga upon which Defendant's proposition rests explicitly applied to a *state* law claim

of inverse condemnation under South Dakota law.[7] Id. at *16. The section of the order which addresses the plaintiff's federal inverse condemnation claim was resolved on other grounds. See id. at *13–14. Since South Dakota law regarding inverse condemnation differs from federal and Missouri law, Aga does not provide precedential value for Defendant's position.

Yet, Defendant is correct in arguing that any federal inverse condemnation claim is duplicative of Plaintiff's takings claims. It is well-established that a plaintiff may not receive double recovery for the same wrong, and therefore duplicative claims are prohibited. Margolies v. McCleary, Inc., 447 F.3d 1115, 1125–26 (8th Cir. 2006); Conway v. Icahn & Co., 16 F.3d 504, 511 (2d Cir. 1994) ("Where a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed."). Under federal law, an inverse condemnation claim is an action by a landowner to recover compensation for a taking where the government took the property at issue not through the formal exercise of eminent domain but through other means. United States v. Clarke, 445 U.S. 253, 257 (1980); , First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal., 482 U.S. 304, 316 (1987). Therefore, a total regulatory taking claim falls under the umbrella of inverse condemnation. Becker v. City of Hillsboro, Missouri, 667 F. Supp. 3d 996, 1001 (E.D. Mo. 2023) ("a regulatory taking is a type of inverse condemnation"); Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 93 n.3 (2d Cir. 1992) ("a regulatory taking— also known as inverse condemnation").

---

[7] Defendant quotes in both its supporting and reply suggestions what initially appears to be very compelling support from Aga: "Approving plats, granting building permits and issuing certificates of occupancy before property may be inhabited are not the types of County action upon which a claim of inverse condemnation may proceed." (Docs. #97 at 20, #108 at 6). However, upon reviewing Aga, the Court took note of the fact that Defendant had misquoted the sentence. The accurate sentence in Aga is the following: "Approving plats, granting building permits and issuing certificates of occupancy before property may be inhabited are not the types of County action upon which a **_state_** claim of inverse condemnation may proceed." Aga, 2022 WL 3716000, at *16 (emphasis added). The Court additionally notes that Defendant cites to the incorrect page number for this quote.

Here, Plaintiff makes no claim that any type of federal inverse condemnation has occurred other than a total regulatory taking. In Count IV, Plaintiff simply tacks on the allegation that Defendant's actions "constitute an unreasonable, unusual, or unnatural use" of Lot 9, which is irrelevant to a total regulatory taking claim.[8] (Doc. #1 at 25). The parties, facts, and law underlying these federal claims are identical. Also, Plaintiff fails to raise any argument in its opposition suggestions to contradict Defendant's assertion that Count IV is duplicative. To the extent Count IV is a federal inverse condemnation claim, it is duplicative of Count I, so Defendant is granted summary judgment.

## B. Defendant is Denied Summary Judgment on Plaintiff's Missouri Inverse Condemnation Claim.

Article I § 26 of the Missouri Constitution provides that "private property shall not be taken or damaged for public use without just compensation."[9] Under Missouri law, inverse condemnation a similar definition as under federal law, [10] and a regulatory taking is a type of inverse condemnation. Cnty. of Scotland v. Missouri Pub. Entity Risk Mgmt. Fund, 537 S.W.3d 358, 364–65 (Mo. Ct. App. 2017). However, Missouri inverse condemnation claims are not limited to regulatory takings. "Inverse condemnation may be established 'where an invasion or appropriation of a valuable property right that caused an injury can be shown.'" Id. (quoting Clay Cnty. Realty Co. v. City of Gladstone, 254 S.W.3d 859, 864 (Mo. 2008)). "Inverse condemnation

---

[8] Under Missouri law, "[n]uisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property." Frank v. Env't Sanitation Mgmt., Inc., 687 S.W.2d 876, 880 (Mo. 1985).

[9] As a preliminary matter, the Court notes that the availability of an inverse condemnation action under Missouri law does not bar Plaintiff from bringing a Fifth Amendment Takings claim. Knick v. Twp. of Scott, Pennsylvania, 588 U.S. 180, 191 (2019) ("The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim[.]").

[10] "Inverse condemnation is a cause of action against a governmental agency to recover the value of the property taken by the agency, though no formal exercise of the power of eminent domain has been completed." Cnty. of Scotland v. Missouri Pub. Entity Risk Mgmt. Fund, 537 S.W.3d 358, 364–65 (Mo. Ct. App. 2017) (quoting Dulany v. Mo. Pac. R.R. Co., 766 S.W.2d 645, 648 (Mo. App. W.D. 1988)).

is the exclusive remedy when private property is damaged by a nuisance operated by an entity having the power of eminent domain." Basham v. City of Cuba, 257 S.W.3d 650, 653 (Mo. Ct. App. 2008). "The elements of an inverse condemnation action based on nuisance are (1) notice, (2) an unreasonable operation in spite of that notice, (3) injury, (4) damage, and (5) causation." Miller v. City of Wentzville, 371 S.W.3d 54, 57 (Mo. Ct. App. 2012).

Here, Plaintiff pled facts that satisfy the elements of a Missouri inverse condemnation claim based on nuisance, and Defendant raises no argument to the contrary. Defendant also does not argue that a Missouri inverse condemnation claim is duplicative of Plaintiff's takings claim. Instead, Defendant argues Plaintiff lacks standing to assert the claim and it is not ripe. (Doc. #97 at 18). Specifically, Defendant argues Plaintiff lacks standing because the damages it complains of were ascertainable at the time it purchased the property, and inverse condemnation cannot be sustained under Missouri law because Plaintiff failed to first assert the claim in state court.

Defendant argues this case fits squarely under State ex rel. City of Blue Springs v. Nixon, 250 S.W.3d 365, 371 (Mo. 2008), where a subsequent purchaser of property experienced stormwater runoff issues due to defects in the area's drainage that could be tied back to its pre-approved plat. In City of Blue Springs, the approved plat met development codes but lacked adequate drainage for stormwater runoff from a hill; however, this issue was ascertainable at the time the plat was approved, which was before the plaintiffs purchased the property. Id. at 370. The Missouri Supreme Court held the plaintiffs lacked standing to assert an inverse condemnation claim because the damage could not pass to subsequent grantees as such claims do not run with the land. Id. The court additionally held that even if the drainage issue was not ascertainable before the plaintiffs owned the land, there was no affirmative conduct by the city other than approval of a plat that—for better or worse—met municipal requirements. Id. at 371–72. Such conduct does

18

not rise to the level of affirmative action sufficient to support a claim of inverse condemnation under Missouri law. Id.

In opposition, Plaintiff argues City of Blue Springs is distinguishable from the instant action because the plat in that case met code requirements when it was approved whereas the Sixth Plat did not. (Doc. #104 at 27–28). But Plaintiff argues the government action that is at the crux of this case is not approval of a plat but unconstitutional denial of a Final CO. Plaintiff argues it was not possible to ascertain at the time Lot 9 was purchased that Defendant would impose special conditions on Plaintiff that were not reflected in the preapproved plat or later-issued building permit. Specifically, Plaintiff refers to the fact that the Sixth Plat did not reflect a watercourse behind Lot 9 or a storm sewer easement, which would affect Plaintiff's right to grade to the property line.

The Court agrees with Plaintiff that its claim is not barred by City of Blue Springs. If Plaintiff was only alleging damage from approval of the Sixth Plat, the Court would be inclined to agree with Defendant. However, Plaintiff's claim centers around the denial of a Final CO, which occurred when Plaintiff owned the land. Therefore, Plaintiff has standing to assert a Missouri inverse condemnation claim.

As to Defendant's argument that a Missouri inverse condemnation claim is not ripe, the Court disagrees. Defendant argues that because Missouri law provides a remedy for inverse condemnation in zoning and permitting matters, Plaintiff had to first assert its claim in state court, which it failed to do. (Doc. #97 at 17). To support this argument, Plaintiff cites L.C. Dev. Co. v. Lincoln Cnty., 996 F. Supp. 886, 888 (E.D. Mo. 1998), which relied upon the Supreme Court's holding in Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). In Williamson County, the Supreme Court held that a plaintiff must first seek

compensation through state inverse condemnation proceedings before bringing the claim in federal court. Id. at 194–95. However, this portion of Williamson County was overruled in Knick v. Twp. of Scott, Pennsylvania, 588 U.S. 180, 204–06 (2019), where the Supreme Court held that the state-litigation requirement had proved to be unworkable. Therefore, Defendant's ripeness argument is unfounded.

While it remains to be seen whether Plaintiff could ultimately prove a Missouri inverse condemnation claim, Defendant has not demonstrated it is entitled to summary judgment. Plaintiff has standing to assert the claim, and some of the same disputed material facts that exist as to Count I are also disputed as to Count IV. Therefore, Defendant's motion for summary judgment as to Count IV Missouri inverse condemnation is denied, and Count IV survives in the alternative to Count I.

## IV. Defendant is Granted Summary Judgment on Count II Procedural Due Process.

In its complaint, Plaintiff asserts Count II – Procedural Due Process Under 42 U.S.C. §§ 1983 and 1988. (Doc. #1 at 20). To support Count II, Plaintiff alleges Defendant's application of Chapter 520 to Lot 9 was irrational because it is inapplicable as a matter of law. Plaintiff alleges it was denied due process when Defendant denied it a Final CO, refused to reinspect Lot 9, rejected its appeal to the BZA without a hearing, and failed to pay just compensation for a regulatory taking.

Defendant argues Plaintiff's due process claim is duplicative of its takings claim and must be dismissed as an impermissible attempt to recast its takings claim. (Doc. #97 at 20). Defendant also argues Plaintiff has no protectable property interest because it was not entitled to the Final CO, which it had a valid right to withhold.

In opposition, Plaintiff argues the Court should deny summary judgment because fact questions remain that must go to a jury. (Doc. #104 at 29). Plaintiff points to Del Monte Dunes and the Supreme Court's holding that "whether the government had denied a constitutional right

20

in acting outside the bounds of its authority, and, if so, the extent of any resulting damages" were questions for a jury. Del Monte Dunes, 526 U.S. at 722.

As stated above, duplicative claims are prohibited. Margolies v. McCleary, Inc., 447 F.3d 1115, 1125–26 (8th Cir. 2006). The duplicative concept is generally applied when a party attempts to maintain two separate actions involving the same subject matter at the same time. See Ritchie Cap. Mgmt., L.L.C. v. BMO Harris Bank, N.A., 868 F.3d 661, 664 (8th Cir. 2017) However, the concept applies equally to cases involving two purportedly distinct claims that are in fact the same, and both claims are raised in the same cause of action. See, e.g., Becker v. City of Hillsboro, Missouri, 667 F. Supp. 3d 996, 1002–03 (E.D. Mo. 2023) (dismissing due process claim as duplicative of takings claim).

Defendant's argument that Plaintiff is merely recasting its takings claim as a due process claim is persuasive. In the due process section of its opposition suggestions, Plaintiff largely restates the arguments it made in support of its takings claim—arguing it has an interest in a reasonable economic use of its property and Defendant deprived it of this property right by wrongfully denying it a Final CO. (Doc. #104 at 29–30). Furthermore, the section of Del Monte Dunes that Plaintiff cites to, to support its argument discusses fact questions related to a takings claim, not a due process claim. 526 U.S. at 722. In fact, there was no procedural due process claim asserted in Del Monte Dunes; the plaintiff asserted a substantive due process claim. Id. at 699.

Plaintiff's failure to raise allegations distinguishable from its takings claim supports the conclusion that Count II is duplicative of Count I. Moreover, in arguing its procedural due process rights were violated, counterintuitively, Plaintiff identifies process afforded to it by Defendant. Plaintiff notes that *after* learning of the City's concerns "it attempted to comply [] by working with the City officials to install the approved culvert pipe." The undisputed facts also demonstrate that

there was lengthy, repeated communication concerning the grading of Lot 9, as well as written documents placing Plaintiff on notice as to the issues (for example, the temporary CO, which identified a "Section 520" issue on December 19, 2022). This all supports a finding that adequate process existed, but because Plaintiff's due process claim is simply duplicative of its takings claim the Court need not examine this issue any further. Gearhart, 553 F. App'x at 660; see also Pietsch v. Ward Cnty., 991 F.3d 907, 909 (8th Cir. 2021) (holding that plaintiffs were impermissibly attempting to recast a takings claim as a due process claim). Defendant is granted summary judgment on Count II Procedural Due Process.

**V. Defendant is Not Entitled to Summary Judgment on Count III Equal Protection.**

In its complaint, Plaintiff asserts Count III – Equal Protection. (Doc. #1 at 22). To support Count III, Plaintiff alleges Defendant selectively enforced the City of Parkville Municipal Code against Plaintiff in an effort to force Plaintiff to bear the cost of remediating drainage issues caused by Defendant's approval of the Sixth Plat. Plaintiff further alleges Defendant selectively targeted Plaintiff for discriminatory treatment by refusing to grant the Final CO for Lot 9 with no rational basis for such action. Plaintiff alleges it was similarly situated to other individuals yet received this discriminatory treatment in violation of its equal protection rights.

Defendant argues it is entitled to summary judgment on Count III because Plaintiff will be unable to prove a class-of-one discrimination claim. (Doc. #97 at 23). Defendant contends Plaintiff was denied a Final CO because Lot 9 did not comply with Chapter 520 of the municipal code, whereas all properties that received Final COs were in compliance. Defendant also contends that no other landowners attempted to completely backfill the swale, but Plaintiff did and this led to the denial of the Final CO. Consequently, Defendant argues, it treated Plaintiff equally to all other

22

builders. Yet, even if there was disparate treatment, Defendant argues it had a rational basis for withholding the Final CO.

In opposition, Plaintiff argues it has been treated differently than any other builder that has built within the City of Parkville. (Doc. #104 at 31). Plaintiff states it has been unable to locate any other instance where a builder was required to obtain a Chapter 520 permit, and all other similarly situated builders were allowed to grade into the drainage area behind the homes on Promenade Drive without first obtaining a Chapter 520 permit. Plaintiff argues additionally that a City alderman was given preferential treatment. Plaintiff argues there is no legitimate purpose for the disparate treatment because it complied with all city ordinances and Defendant's stated purpose is illegitimate. At minimum, Plaintiff contends that disputed factual questions remain on Count III, requiring the claim to be submitted to the jury.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Sioux City Bridge Co. v. Dakota Cnty., Neb., 260 U.S. 441, 445 (1923) (quoting Sunday Lake Iron Co. v. Wakefield Twp., 247 U.S. 350, 352 (1918)). To that end, the Supreme Court has recognized two types of equal protection claims: class-based discrimination and "class of one" discrimination. Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601 (2008). "A class-of-one claim is stated when a plaintiff alleges that a defendant intentionally treated [it] differently from others who are similarly situated and that no rational basis existed for the difference in treatment." Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011).

Here, Plaintiff does not question the City's general permitting or CO practices or ordinances; Plaintiff questions a particular decision to deny a specific CO. In other words, Plaintiff

23

alleges a class-of-one equal protection claim. Therefore, Plaintiff must provide a "specific and detailed account of the nature of the preferred treatment of the favored class[.]" <u>Mensie v. City of Little Rock</u>, 917 F.3d 685, 692 (8th Cir. 2019) (internal quotation omitted). And "the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." <u>Id.</u> (internal quotation omitted).

Defendant fails to show that it would not be possible for Plaintiff to satisfy this demanding standard at trial, and disputed facts remain so as to preclude summary judgment on Count III. First, the class of similarly situated individuals identified by Plaintiff is comparable in all material respects. Plaintiff identifies other homebuilders on the same street, Promenade Drive, who built single-family homes in the Sixth Plat. Plaintiff even includes itself in the group with regard to its other lots.

Plaintiff alleges the similarly situated class has engaged in the same actions with respect to other properties on Promenade Drive as Plaintiff engaged in on Lot 9. Specifically, Plaintiff argues they graded all the way to their property lines and into the same drainage area. Plaintiff also argues another similarly situated builder, a city alderman, was given preferential treatment and was allowed not only to grade into the drainage area behind his home but also to build a stone bridge with two culvert pipes. Additionally, Plaintiff contends that no other builder was required to pull a 520-grading permit to engage in the same conduct as Plaintiff. Defendant disputes this fact, arguing the other builders were not required to apply for such permits, unlike Plaintiff, because none of them attempted to completely backfill the swale.[11] Whether Plaintiff was subject to disparate treatment compared with a similarly situated class of individuals is therefore a disputed material fact.

---

[11] It is unclear to the Court based on the current record whether grading all the way to the property line is the same as backfilling the swale.

However, Defendant urges the Court to discount Plaintiff's evidence, arguing the evidence Plaintiff cites to support its claims of disparate treatment is inadmissible hearsay and could not be presented at trial. This may or may not prove to be the case, but Plaintiff will have its opportunity to try. If Plaintiff is able to prove these facts at trial (through admissible evidence) then it will have demonstrated that Defendant selectively enforced its ordinance against Plaintiff. As of now, these material facts are disputed.

In addition, whether Defendant's actions are supported by a rational basis and are therefore constitutional is also disputed. Defendant argues even if Plaintiff faced disparate treatment, it was supported by a rational basis and therefore cannot constitute an equal protection violation. (Doc. #97 at 24). Defendant argues the Final CO was denied due to the need for proper drainage and to protect adjacent landowners, which is more than a rational basis. However, Plaintiff argues because Lot 9 was the last lot to be developed in the area, it presented the last opportunity to address the drainage issues of the Sixth Plat; and recognizing this, Defendant treated Plaintiff differently with respect to Lot 9 so as to force it to fix the problem. Where no suspect classification is involved, disparate treatment by a city is valid so long as there is a rational relationship between the disparate treatment and some legitimate governmental purpose. Heller v. Doe by Doe, 509 U.S. 312, 320 (1993).

Viewing the facts in Plaintiff's favor, a jury could conclude that Defendant's conduct is not supported by a rational basis. Defendant's stated goal of preventing potentially damaging water intrusion on the properties adjacent to Lot 9 is a legitimate goal. The means by which Defendant sought to achieve that goal—deny a Final CO until the drainage issue is resolved—is rational, even if it is an imperfect fit. Heller, 509 U.S. at 321. However, relying on deposition testimony, Plaintiff insists any water that drains behind Lot 9 is shared evenly across the property line and drains into

a detention basin. (Doc. #104 at 27). If this is true, Defendant's stated purpose for the disparate treatment is untenable, and because Defendant does not allege any other reason for the treatment, there is no rational basis. Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 500 (2d Cir. 2001) (holding in the property law context that a city's decision is irrational where it "acts with no legitimate reason for its decision"); see also Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cnty., Ind., 57 F.3d 505, 515 (7th Cir. 1995) ("An ordinance generally applicable on its face but enforced for no legitimate reason against only an individual or a particular class may violate the Equal Protection Clause.").

At this time, the evidence supports conflicting conclusions. Plaintiff has presented a genuine issue as to whether Defendant's actions constituted disparate treatment and whether said treatment was supported by a rational basis. Therefore, Defendant's motion for summary judgment as to Count III Equal Protection must be denied.

## VI. Defendant is Not Entitled to Summary Judgment on Count V Mandamus and Declaratory Judgment.

In its complaint, Plaintiff asserts Count V – Mandamus and Declaratory Judgment. (Doc. #1 at 27). To support Count V, Plaintiff alleges the City wrongfully denied a Final CO for Lot 9 based solely on the application of an ordinance (Chapter 520) to which Lot 9 is exempt. Plaintiff alleges Defendant has no other reason to deny its Final CO, and therefore it is entitled to a writ of mandamus ordering Defendant to issue the Final CO. Plaintiff also alleges it has exhausted its administrative remedies.

Defendant argues Count V is barred by claim preclusion, or res judicata, based on a prior state court judgment issued against Plaintiff. (Doc. #97 at 24–25). Defendant contends the Platte

County Circuit Court[12] held briefing and hearing on the merits of Plaintiff's mandamus claim, and all other elements of claim preclusion are satisfied. Therefore, Defendant asks for summary judgment on Count V.

Plaintiff makes no attempt to address Defendant's position in the argument section of its opposition suggestions. (Doc. #104). However, Plaintiff contradicts Defendant's characterization of the state court case in the facts section—arguing the case was not dismissed on the merits—so the Court does not deem the argument waived. Id. at 17. In the facts section, Plaintiff contends the state court case was not dismissed on the merits and cites Missouri statutory law that states "involuntary dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify." Id. at 17 (citing Mo. R. Civ. P. 67.03).

The doctrine of claim preclusion bars parties from relitigating matters previously adjudicated. San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal., 545 U.S. 323, 336 (2005). "Federal courts are required 'to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" Brown v. Kansas City Live, LLC, 931 F.3d 712, 714 (8th Cir. 2019) (quoting Allen v. McCurry, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738)); Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Here, the judgment at issue was rendered by the Circuit Court for Platte County, Missouri, so Missouri claim preclusion law applies. "Under Missouri law res judicata applies where (1) the prior judgment was rendered by a court of competent jurisdiction, (2) the decision was the final judgment on the merits, and (3) the same cause of action and the same parties or their privies were

---

[12] In the supporting suggestions accompanying Defendant's motion, Defendant mistakenly refers to a "Clay" County Circuit Court case. The relevant state case was based in the Platte County Circuit Court, which is correctly noted in the other sections of Defendant's suggestions.

involved in both cases." <u>Brown</u>, 931 F.3d at 714 (citing <u>Bannum, Inc. v. City of St. Louis</u>, 195 S.W.3d 541, 544 (Mo. Ct. App. 2006) (cleaned up).

Similarly, issue preclusion, or collateral estoppel, bars relitigation of factual or legal issues determined in a previous action. <u>Baker Elec. Co-op., Inc. v. Chaske</u>, 28 F.3d 1466, 1475 (8th Cir. 1994). As with claim preclusion, a federal court applies the law of the forum state that issued the prior judgment to determine its preclusive effect. <u>Id.</u> Issue preclusion applies in Missouri when (1) the issue in the present case identical to the issue decided in the prior adjudication, (2) there is a prior judgment on the merits, (3) the party against whom issue preclusion is asserted is the same or in privity with the party in the prior suit, and (4) party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior suit. <u>State ex rel. Johns v. Kays</u>, 181 S.W.3d 565, 566 (Mo. 2006).

It is unclear whether Defendant means to assert claim or issue preclusion. Defendant consistently refers to "claim" preclusion. (Doc. #97 at 25–26). However, in practice Defendant appears to be seeking issue preclusion, because it makes no argument that the state court judgment has preclusive effect beyond Count V. Regardless, Defendant's arguments are insufficient to satisfy the elements of either claim or issue preclusion under Missouri law because the prior state court judgment was not "on the merits" of Plaintiff's mandamus claim.

As a preliminary matter, it must be acknowledged that the record before the Court on the prior state court judgement is incomplete. The Court has a copy of the judgment of dismissal, issued October 3, 2023, which simply states the City of Parkville's motion to dismiss is granted.[13]

---

[13] The state court "Judgment of Dismissal" states the following:
    "COMES NOW this Court, having reviewed Respondents' Motion to Dismiss Relator's Petition for Writ of Mandamus and to Quash the Preliminary Order in Mandamus and Respondent's Suggestions in Support of that Motion; Relator's Opposition to Respondent's Motion to Dismiss; and having heard argument of counsel both in support of, and in opposition to, said Motion, this Court:
    **GRANTS** Respondents' Motion to Dismiss Relator's Petition for Writ of Mandamus and to Quash the Preliminary Order in Mandamus."

(Doc. #1-20). The Court does not possess copies of any of the briefings filed in state court or a transcript of the hearing that was held. Unfortunately, the Court also received very little description from the parties of the nature of the discussions in state court.

Based on the evidence presented, the Court finds the prior state court judgment was not a judgment on the merits, so Defendant is not entitled to summary judgment as a matter of law. Defendant states that the prior case was dismissed because the state court found that Plaintiff failed to exhaust administrative remedies. (Doc. #108 at 7). About a month after this dismissal, Plaintiff filed its appeal with the BZA, which was rejected as untimely on November 28, 2023. Even if the state of administrative exhaustion in this matter were unchanged, the prior dismissal for failure to exhaust administrative remedies is not a dismissal on the merits.

In Normandy Sch. Dist. v. City of Pasadena Hills, the Missouri Court of Appeals held that "[r]es judicata will not attach from a dismissal for failing to exhaust administrative remedies." 70 S.W.3d 488, 495 (Mo. Ct. App. 2002). Normandy involved a school district that had applied twice for a building permit to install portable classrooms, and was twice denied by the city for failure to comply with its zoning ordinances. After the first permit application was denied, the school district appealed directly to the circuit court (instead of the BZA), and the circuit court dismissed the case for failure to exhaust administrative remedies. The Court of Appeals reasoned that under those circumstances, where a party has not received an administrative hearing regarding the alleged ordinance violation, the dismissal by the circuit court is not on the merits. This reasoning is equally applicable in the issue preclusion context. See Korte Trucking Co. v. Broadway Ford Truck Sales, Inc., 877 S.W.2d 218, 220 (Mo. Ct. App. 1994) ("[B]oth the doctrines of res judicata and collateral estoppel apply to judgments rendered upon the merits.").

---

This quotation represents the state court order in its entirety, other than the case caption and a signature line.

The circumstances here parallel those in <u>Normandy</u> and require a finding that the prior dismissal in the Platte County Circuit Court was not a dismissal on the merits. Here, Plaintiff was denied a Final CO for Lot 9. Seeking to overturn the City's decision, Plaintiff filed an action for a writ of mandamus in the Platte County Circuit Court. The circuit court dismissed the action without prejudice because Plaintiff failed to exhaust administrative remedies. Therefore, as explained above, it was not a judgment on the merits. Since the prior state action was not a judgment on the merits, it lacks preclusive effect under Missouri law. Consequently, Defendant is not entitled to summary judgment as a matter of law and its motion is denied as to Count V. Accordingly, it is hereby

ORDERED Defendant's motion for summary judgment (Doc. #96) is GRANTED IN PART AND DENIED IN PART. Summary judgment is GRANTED on Counts II and IV to the extent it is a Federal Inverse Condemnation Claim, and DENIED on Counts I, III, IV to the extent it is a Missouri Inverse Condemnation Claim, and Count V.

IT IS SO ORDERED.

Dated: <u>January 24, 2025</u>          <u>/s/ Brian C. Wimes</u>
                                        JUDGE BRIAN C. WIMES
                                        UNITED STATES DISTRICT COURT